# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

GARY D. WOODS, )
 )
        Plaintiff, )
 )
v. ) Case No. CIV-15-165-FHS-KEW
 )
CAROLYN W. COLVIN, Acting )
Commissioner of Social )
Security Administration, )
 )
        Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Gary D. Woods (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on September 9, 1964 and was 51 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as an appliance assembler. Claimant alleges an inability to work beginning January 22, 2009 due to limitations resulting from head, shoulder, neck, leg, and stomach pain and depression.

**Procedural History**

On June 24, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On December 17, 2010, an Administrative Law Judge ("ALJ") issued an unfavorable decision. The decision was reversed by this Court and remanded to Defendant for further on September 13, 2013.

On August 21, 2014, ALJ Robert McPhail conducted a second administrative hearing with Claimant appearing in Fort Smith, Arkansas and the ALJ presiding in San Antonio, Texas. On January 29, 2015, the ALJ issued a second unfavorable decision. Claimant did not seek review before the Appeals Council. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.984, 416.1484.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the RFC to perform a full range of light work.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to identify all of his severe impairments; (2) reaching an improper RFC; and (3) making inadequate findings at step five.

**Step Two Analysis**

In his decision, the ALJ determined Claimant suffered from the severe impairments of coronary artery disease and degenerative disc disease of the lumbar spine. (Tr. 437). The ALJ concluded that Claimant retained the RFC to perform a full range of light work. In so doing, he found Claimant could lift and/or carry 20 pounds occasionally and ten pounds frequently; stand and/or walk about six hours in an eight hour workday; and sit for about six hours in an eight hour workday. (Tr. 439). After consultation with a vocational expert, the ALJ found Claimant retained the RFC to perform the representative jobs of small products assembler, inspector/packer, and fast food worker, all of which the ALJ found to exist in sufficient numbers both regionally and nationally. (Tr. 447). As a result, the ALJ found Claimant was not disabled from January 22, 2009 through the date of the decision. Id.

Claimant first contends the ALJ failed to include all of his severe impairments at step two of the sequential evaluation. Specifically, Claimant alleges that, in addition to the severe impairments found by the ALJ, he suffers from degenerative disc

5

disease of the cervical spine which causes neck and shoulder pain and headaches.

Because the ALJ did find that Claimant had severe impairments, any failure to find Claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effects of these impairments and account for them in formulating Claimant's RFC at step four. See, e.g., Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [Claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.'"), quoting Langley v. Barnhart, 373 F.3d 1116, 1123-24 (10th Cir. 2004) and 20 C.F.R. § 404.1523. See also Hill v. Astrue, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted

impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.' ") [emphasis in original] [citations omitted].

The ALJ considered the medical findings concerning Claimant's cervical spine but found the testing revealed only early degenerative changes. The cervical myelogram showed no associated nerve root compression or thecal sac compression. (Tr. 441). The ALJ did not err in failing to identify the degenerative disc disease of the cervical spine as a severe impairment at step two. The medical record simply did not support further restriction based on this condition.

Claimant also contends the ALJ should have found his headaches to be a severe impairment. The headaches appear to be associated with the prior condition, which this Court has determined was not severe.

Claimant asserts he suffered from mental impairments which the ALJ did not consider severe. To the extent Claimant relies upon the prior opinion from this Court to assert these mental conditions should have been included as severe impairments, the prior reversal decision merely stated that the report of Dr. Robert Spray should

7

be considered new evidence which should be considered by the ALJ on remand. The Court did not make a finding that the condition should necessarily be considered a severe impairment. (Tr. 539).

Dr. Spray completed a mental RFC assessment on Claimant dated March 2, 2011. He found Claimant was extremely limited in the functional areas of maintaining regular attendance and demonstrating reliability. Dr. Spray determined Claimant was severely limited in the areas of performing activities within a schedule, being punctual within customary tolerances, completing a normal workday, completing a normal workweek, performing at a consistent pace, performing without an unreasonable number or length of rest periods, and behaving in an emotionally stable manner. He further found Claimant was markedly limited in the areas of dealing with work stresses, functioning independently, understanding detailed or complex instructions, remembering detailed or complex instructions, maintaining attention for extended periods of time, maintaining concentration for extended periods of time, sustaining an ordinary routine without special supervision, making simple work-related decisions, avoiding undue constriction of interests, responding and adjusting to the use of new and unfamiliar tools and/or machines, and accepting instructions and responding appropriately to criticism from

8

supervisors. (Tr. 427-30).

The ALJ carefully considered Dr. Spray's limitations and found them to have no weight, largely because the medical record was devoid of evidence that Claimant's mental condition required extensive treatment or caused Claimant more than a minimal problem. (Tr. 444). No error is found in the ALJ's failure to include Claimant's mental problems as severe impairments or to attribute significant functional restrictions based upon the condition.

## RFC Assessment

Claimant first challenges the ALJ's rejection of Dr. David Trent, Claimant's treating physician. Dr. Trent completed a medical source statement dated May 14, 2010. He found Claimant could sit for 15 minutes at a time and stand and walk for 20 minutes at a time. He noted Claimant had difficulty getting out of a chair. Claimant could occasionally lift/carry up to ten pounds and rarely lift/carry up to 20 pounds. (Tr. 358). Dr. Trent found Claimant was limited in his lower extremities. He could occasionally push/pull, rarely work in extended position, and never work above shoulder level, work overhead, or reach. Claimant could frequently grasp and engage in fine manipulation. He could rarely bend, stoop, balance, twist, and climb stairs. But he could never squat, crawl, crouch, kneel, climb ladders, ramps, or scaffolds.

(Tr. 359). Claimant could also never be around unprotected heights, dangerous moving machinery, or vibrating tools. (Tr. 360). In his narrative statement, Dr. Trent stated that Claimant had multiple office visit exams since January 21, 2009 with no improvement to various treatments and referred to multiple specialists. Id.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the

10

nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion.  20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted).  Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight."  Id.  "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so."  Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ gave "no weight" to Dr. Trent's opinion because he found it was not supported by the clinical evidence of record. (Tr. 443).  This finding is well-supported given the negative lumbar myelogram and CT scans (Tr. 353) and lack of treatment

11

records from Dr. Trent and other physicians to support the level of restrictions found by Dr. Trent in his source statement. This Court finds no error in the evaluation of Dr. Trent's opinion. As previously stated, Dr. Spray's opinion is suspect due to the isolated position taken as compared to the remainder of the medical record.

Claimant also urges this Court to find the finding that Claimant could perform light work is not supported. Claimant would have this Court glean that because he has mild to moderate disc bulging, he cannot perform light work. This is not the standard for evaluating the ability to engage in basic work activity.

Claimant states the ALJ failed to conduct a proper credibility analysis. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that

precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ methodically proceeded to cite the applicable legal standards for evaluating credibility, analyze Claimant's activities of daily living which are inconsistent with Claimant's testimony, and proceed through the medical record finding conflicts with the

13

level of limitation to which Claimant testified concerning the location, duration, frequency, and intensity of his pain. The discussion contains thoughtful reasoning and careful consideration of the record. No error is found in this credibility analysis.

### Step Five Findings

Claimant contends the hypothetical questioning of the vocational expert was faulty because the RFC did not contain all of his restrictions. Since this Court found no error in the RFC, the questioning was appropriate since it mirrored the limitations reflected in the ALJ's findings.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of August, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE